Robert KASTENGREN, Petitioner-Respondent-Cross Appellant,

v.

Wisconsin DEPARTMENT OF REVENUE, Respondent-Appellant-Cross Respondent.

Court of Appeals

*No. 92–1245. Submitted on briefs March 11, 1993.—Decided October 7, 1993.*

(Also reported in 508 N.W.2d 431.)

For the respondent-appellant-cross respondent the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *Warren D. Weinstein*, assistant attorney general.

For the petitioner-respondent-cross appellant the cause was submitted on the brief of *Michael P. Stupar* of *Stupar & Schuster, S.C.* of Milwaukee.

Before Gartzke, P.J., Dykman and Sundby, JJ.

SUNDBY, J.   In this case, the Tax Appeals Commission granted the Wisconsin Department of

Revenue's motion for summary judgment determining that the purchaser of Uncle Harry's Fine Food Products, Inc. (Uncle Harry's), Robert Kastengren, is personally liable for Uncle Harry's unpaid sales and use taxes. The circuit court reversed; it concluded that the department had not directed collection against Uncle Harry's as required by Wis. Adm. Code sec. Tax 11.91(4)(a) because it had not attempted to collect the taxes from Kastengren's "predecessor" and Uncle Harry's former owner, Harry Dembroski. We conclude that the department's interpretation of Wis. Adm. Code sec. Tax 11.91(4), which excluded Dembroski as Kastengren's "predecessor," is entitled to controlling weight.[1] We therefore reverse the trial court's order on the department's appeal.

Kastengren suggests an additional basis to affirm the circuit court. He cross-appeals from that part of the court's order which rejected his argument that his liability for Uncle Harry's unpaid taxes abated because all proceeds from the price he paid to purchase Uncle

---

[1] We review the commission's decision as to the department's determination. *William Wrigley, Jr. Co. v. DOR*, 176 Wis. 2d 795, 801, 500 N.W.2d 667, 670 (1993) ("The Tax Appeals Commission is the final administrative authority that reviews redetermination decisions of the Department of Revenue."). The commission did not address Kastengren's argument that he was not Uncle Harry's "predecessor," as that term is used in Wis. Adm. Code sec. Tax 11.91(4). However, because the question of whether the department properly construed Wis. Adm. Code sec. Tax 11.91(4) was presented to the commission and it granted the department's motion for summary judgment, we conclude that the commission endorsed the department's construction. The construction of Wis. Adm. Code sec. Tax 11.91(4) is a question of law, which we review *de novo* because the commission did not discuss the issue or explain its decision in this respect.

Harry's were paid to Uncle Harry's secured creditor, the Bank of Burlington. We conclude that sec. 77.52(18), Stats., required Kastengren to withhold a sufficient amount of the purchase price to pay any unpaid sales or use taxes until Uncle Harry's or Dembroski produced a receipt from the department showing that the taxes were paid. The commission correctly concluded that Kastengren was not excused from complying with that statute merely because Uncle Harry's secured creditor had a lien against the corporation's equipment and inventory which equalled or exceeded the purchase price. We therefore affirm the trial court's order on Kastengren's cross-appeal.

## BACKGROUND

On December 22, 1988, Kastengren entered into an "Asset Purchase Agreement" with Harry Dembroski to purchase Uncle Harry's equipment and inventory. Uncle Harry's owed sales tax to the state. Kastengren paid the purchase price to Uncle Harry's and its secured creditor, the Bank of Burlington. The bank received all of the proceeds of the purchase price; Kastengren did not withhold any of the proceeds to pay the unpaid taxes and did not submit to the department a written request for a sales and use tax clearance certificate.

The commission found that the department could document eleven contacts with Uncle Harry's attempting to collect the delinquent taxes. However, the department ceased its efforts to collect the taxes from Uncle Harry's because it concluded that the corporation was defunct and had no assets. The department did not attempt to collect the taxes from Harry Dembroski.

On August 30, 1989, the department assessed delinquent sales taxes against Kastengren in the amount of $23,010. The amount of the assessment is not contested. Kastengren petitioned the department to redetermine the assessment on the grounds that the department had not first proceeded against Dembroski, and on the further grounds that his liability was abated by his payment of the purchase price to Uncle Harry's secured creditor. Kastengren appealed the department's denial of his petition to the commission and petitioned for review of the commission's adverse decision to the circuit court. On February 17, 1992, the circuit court entered the order which is the subject of the department's appeal and Kastengren's cross-appeal.

## I.

### THE DEPARTMENT'S DUTY TO COLLECT

The circuit court concluded that the department could not direct collection efforts against Kastengren until it had attempted to collect the unpaid sales taxes from Dembroski. Wisconsin Adm. Code sec. Tax 11.91,[2] provides:

---

[2] Wisconsin Adm. Code sec. Tax 11.91 implements and interprets sec. 77.52(18), Stats., which provides in part:

> If any retailer liable for any amount of tax under this sub-chapter sells out the retailer's business or stock of goods or quits the business, the retailer's successors or assigns shall withhold sufficient of the purchase price to cover such amount until the former owner produces a receipt from the department that it has been paid or a certificate stating that no amount is due.
> (a) If the purchaser of a stock of goods fails to withhold from the purchase price as required, the purchaser becomes personally liable for the payment of the amount required to be withheld by the purchaser to the extent of the purchase price valued in money. . . .

(1)(a)   A purchaser or assignee of the business or stock of goods, including furniture, fixtures, equipment and inventory, of any retailer liable for sales or use tax shall be personally liable for the payment of the sales or use tax if the purchaser or assignee fails to withhold a sufficient amount of the purchase price to cover the taxes due.

. . . .

(3)(a)   A purchaser shall withhold a sufficient amount from the purchase price to cover any possible sales or use tax liability.

(b)   The purchaser shall submit a written request to the department for a clearance certificate. . . .

. . . .

(4)(a)   The department shall first direct collection against the predecessor.

(b)   Action[3] against the successor shall not be commenced prior to an action against a predecessor unless it appears that a delay would jeopardize collection of the amount due.

Kastengren argues that the department could not direct collection efforts against him until it attempted to collect the delinquent taxes from Dembroski, who may be liable for the taxes under sec. 77.60(9), Stats. Section 77.60(9) provides:

Any officer or employe of any corporation subject to this subchapter or other person who has responsibility for making payment of the amount of tax imposed under this subchapter and who wilfully fails to make such payment to the department shall be personally liable for such amounts . . . if that corporation is unable to pay such amounts to the department, and the personal liability of such

---

[3] Kastengren does not claim that "action" means a civil action commenced to collect unpaid sales and use taxes.

officer, employe or other responsible person . . . shall survive the dissolution of the corporation. Such personal liability may be assessed by the department against such officer, employe or other responsible person pursuant to this subchapter . . . .

Kastengren claims that the term "predecessor" in Wis. Adm. Code sec. Tax 11.91(4) includes officers of the predecessor corporation. The department asserts that the common meaning of predecessor—"one that precedes . . . something that has been followed or displaced by another," WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1785 (unabr. ed. 1976)—requires the conclusion that the term refers to the business which is sold and not its officers.

The department concedes, however, that the term "predecessor" "is not without doubt." We agree that the term is ambiguous. A statute is ambiguous if reasonably well-informed persons may differ as to its meaning.[4] *TDS Realestate Inv. Corp. v. City of Madison*, 151 Wis. 2d 530, 537, 445 N.W.2d 53, 56 (Ct. App. 1989). A reasonably well-informed person could conclude that an officer or employee of a corporation is a "predecessor" to the purchaser of the corporation because sec. 77.60(9), Stats., provides that the personal liability of the officer or employee "shall survive the dissolution of the corporation." An equally well-informed person could conclude that "predecessor" refers back to those provisions of Wis. Adm. Code sec. Tax 11.91 which require the "successor" to a business to withhold from the purchase price an amount suffi-

---

[4] Construction of administrative rules is governed by the same principles that apply to the construction of statutes. *State ex rel. Staples v. Young*, 142 Wis. 2d 348, 353, 418 N.W.2d 333, 336 (Ct. App. 1987).

cient to cover any possible sales or use tax liability. *See* Wis. Adm. Code sec. Tax 11.91(3)(a). The terms "predecessor" and "successor" are customarily used to describe the parties to a business transfer: the "successor" succeeds to the "predecessor's" assets and liabilities.

We search for the meaning of Wis. Adm. Code sec. Tax 11.91(4), by considering the language and purpose of sec. 77.52(18), Stats. (the title to Wis. Adm. Code sec. Tax 11.91, describing "successor's liability," contains in parentheses "s. 77.52(18), Stats."). The goal of statutory interpretation is to determine and give effect to the intent of the legislature. *Caldwell v. Percy*, 105 Wis. 2d 354, 361, 314 N.W.2d 135, 140 (Ct. App. 1981).

The department argues that the legislature intended that sec. 77.52(18), Stats., would insure collection of taxes owed the state in an expeditious manner. It points out that if it must first pursue corporate officers and employees under sec. 77.60(9), Stats., its opportunity to collect unpaid sales and use taxes may be lost, or at least significantly delayed. Under sec. 77.60(9) the department must show that the corporate officer or employee "wilfully" failed to pay the sales and use taxes. This requires identification of the officer or employee responsible for paying such taxes and then establishing that his or her failure to pay was wilful. Additionally, the department would have to first establish that the corporation is unable to pay the unpaid sales and use taxes. These requirements would not only unduly extend collection, but could require unacceptable litigation costs.

The department cites *Bank of Commerce v. Woods*, 585 S.W.2d 577, 580 (Tenn. 1979) (quoting *Tri-Finan-*

*cial Corp. v. DOR*, 6 Wash. App. 637, 641, 495 P.2d 690, 692 (1972)), which we conclude correctly states the law as to successor tax liability statutes:

> It generally has been recognized that the purpose of [successor liability] statutes is to insure the collectibility of sales taxes due the state by imposing liability upon the purchasing corporation, which is in a financially better position to collect the tax ordinarily than the vendor corporation, which is quitting the business. The clear intention of [the] statutes . . . is to provide that the "tax debt . . . follow the business, its assets or any portion of them."

*See also In re McKeever*, 169 Ariz. 312, 819 P.2d 482 (1991) (*en banc*). "[T]hese statutes are to be construed broadly to protect the state's interest in collecting taxes." *Gammaitoni v. Director of Revenue*, 786 S.W.2d 126, 129 (Mo. 1990) (*en banc*).

In view of the purpose of sec. 77.52(18), Stats., we conclude that the department could reasonably construe "predecessor" as used in Wis. Adm. Code sec. Tax 11.91(4) to refer to the retailer who "quits the business." That construction is entitled to controlling weight. *See Plumbers Local No. 75 v. Coughlin*, 166 Wis. 2d 971, 978, 481 N.W.2d 297, 300 (Ct. App. 1992) (An administrative agency's interpretation of its own regulation is entitled to controlling weight unless inconsistent with the language of the regulation or clearly erroneous.).

## II.

## THE ABATEMENT ISSUE

Kastengren argues that his liability under sec. 77.52(18), Stats., was abated because after satisfying Uncle Harry's secured creditor's lien claim, there was nothing remaining of the purchase price which he could withhold to pay the unpaid sales tax. The commission concluded that the language of sec. 77.52(18) is "clear and concise," and provides no relief from successor liability where the entire purchase price is paid to a secured creditor to satisfy its lien rights. We agree.

█ Kastengren argues that he should be viewed as a mortgagee or financial institution because he paid the entire purchase price to the Bank of Burlington. He cites *Wood County Nat'l Bank and Trust v. DOR*, Wis. Tax App. Comm'n, Docket No. S-11408 (June 19, 1986), where the commission held that the bank was not a "successor" to the retailer on whose loan the bank foreclosed. Wisconsin Adm. Code sec. Tax 11.91(1), entitled "DESCRIPTION OF SUCCESSOR," provides in part: "(d) A financial institution or mortgagee who forecloses on a loan to a retailer owing delinquent sales or use tax shall not incur successor's liability." Kastengren does not fit this description. We conclude that the language of sec. 77.52(18), Stats., and Wis. Adm. Code sec. Tax 11.91(1), unambiguously make Kastengren, as purchaser of Uncle Harry's business and inventory, liable for its unpaid sales taxes.

*By the Court.*—Order reversed on appeal; order affirmed on cross-appeal.